CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 17, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| JOHNATHAN E. C.,[1] | ) | |
| | ) | Civil Action No. 7:25-cv-273 |
| Plaintiff, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | By: C. Kailani Memmer<br>United States Magistrate Judge |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Johnathan E. C. (Johnathan), by counsel, filed this action challenging the Commissioner of Social Security's (Commissioner) final decision finding him not disabled[2] through September 30, 2022, the date last insured, and therefore ineligible for Disability Insurance Benefits (DIB). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party has requested a hearing, and oral argument will not aid in the decisional process. Thus, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be reversed and remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in Social Security opinions.

[2] However, as noted below, the administrative law judge (ALJ) found Johnathan was disabled—for Supplemental Security Income (SSI) purposes—starting on June 21, 2023, so the ALJ found Johnathan was eligible for SSI. R. 37.

## STANDARD OF REVIEW

In reviewing the merits of the Commissioner's final decision, judicial review is limited to assessing whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990)).

Further, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). ALJs must not only reach a conclusion supported by substantial evidence but must also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95.

## CLAIM HISTORY

Johnathan was born in 1973 and completed high school. R. 202, 239. On February 22, 2022, Johnathan applied for DIB and SSI, and he alleged a disability onset date of October 5, 2021. R. 202, 209. On August 23, 2022, Johnathan's claims were initially

denied, R. 123, 128, and again upon reconsideration on April 26, 2023. R. 139, 143. On May 8, 2023, Johnathan requested an ALJ hearing. R. 146. On November 29, 2023, the ALJ held a hearing, and Johnathan was represented by counsel. R. 47. Ms. Karen Krull testified as the vocational expert. R. 76–80. On February 16, 2024, the ALJ issued a "Partially Favorable" decision, analyzing Johnathan's claims under the familiar five-step process,[3] and finding him not under a disability for DIB purposes through September 22, 2022, but the ALJ found—for SSI purposes—he was under a disability starting on June 21, 2023. R. 37.

At the first step, the ALJ found Johnathan had not engaged in substantial gainful activity since October 5, 2021. R. 23. At the second step two, the ALJ found Johnathan had the following severe impairments since October 5, 2021: (1) degenerative disc disease, (2) scoliosis, (3) chronic obstructive pulmonary disease (COPD), (4) right biceps tendinopathy, (5) chronic pain syndrome, (6) hip bursitis, and (7) obesity. *Id*. Further, at the second step, the ALJ determined that since October 31, 2022, Johnathan had the above severe impairments in addition to the severe impairment of lumbar radiculopathy. *Id*. Additionally, at the second step, since June 21, 2023, the ALJ found Johnathan had the above severe impairments, and he also had the severe impairment of left wrist

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to the claimant's past relevant work; and if not, (5) whether the claimant can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam); *Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. *Oakes v. Kijakazi*, 70 F.4th 207, 211 (4th Cir. 2023) (citing *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017)). At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

osteoarthritis. *Id.* At the third step, the ALJ found Johnathan did not have an impairment or combination of impairments that, individually or in combination, met or medically equaled the severity of one of the listed impairments. *Id.*

The ALJ concluded that before October 31, 2022, Johnathan had the residual functional capacity (RFC) to perform light work[4] with the following exceptions:

> The claimant could occasionally perform climbing, stooping, kneeling, crouching, and crawling; with the right arm, could frequently perform reaching; and could have occasional exposure to extreme heat and cold, humidity, vibrations, pulmonary irritants (like fumes, odors, dusts, gases, and poorly ventilated areas), and other hazards like hazardous machinery.

R. 24.

Further, the ALJ found that from October 31, 2022, through June 20, 2023, Johnathan had the RFC to perform sedentary work[5] with the following exceptions:

---

[4] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[5] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

> The claimant could occasionally perform climbing, stooping, kneeling, crouching, and crawling; with the right arm, could frequently perform reaching; and could have occasional exposure to extreme heat and cold, humidity, vibrations, pulmonary irritants (like fumes, odors, dusts, gases, and poorly ventilated areas), and other hazards like hazardous machinery.

R. 31.

Additionally, the ALJ found that since June 21, 2023, Johnathan had the RFC to perform sedentary work with the following exceptions:

> The claimant can occasionally perform climbing, stooping, kneeling, crouching, and crawling; with the right arm, can frequently perform reaching; can have occasional exposure to extreme heat and cold, humidity, vibrations, pulmonary irritants (like fumes, odors, dusts, gases, and poorly ventilated areas), and other hazards like hazardous machinery; and can only occasionally perform handling, fingering, and feeling with the left upper extremity.

R. 32.

At the fourth step, the ALJ concluded Johnathan was unable to perform any past relevant work. R. 33. At the fifth step, based on Ms. Krull's testimony, the ALJ identified the following jobs, which exist in significant numbers in the national economy, that Johnathan could perform before October 31, 2022: (1) cashier II, (2) cleaner, and (3) counter attendant. R. 35. Additionally, at the fifth step, based on Ms. Krull's testimony, the ALJ also identified the following jobs, which exist in significant numbers in the national economy, that Johnathan could perform before June 21, 2023: (1) surveillance system monitor, (2) addresser/sorter, and (3) document specialist. R. 36. However, at the fifth step, the ALJ found that starting on June 21, 2023—when Johnathan turned 50 years old—there were no jobs that exist in significant numbers in the national economy that he could perform. *Id.* Thus, the ALJ found Johnathan was not disabled—for DIB purposes—

from October 5, 2021, through September 30, 2022, the date last insured. R. 37. Further, the ALJ found Johnathan was disabled—for SSI purposes—starting on June 21, 2023. *Id.* On February 20, 2025, the Appeals Council denied Johnathan's appeal. R. 1. This appeal followed.

Because this court writes primarily for the parties who are familiar with the facts, the court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed below.

## ANALYSIS

### I. Summary of the Parties' Arguments and the Court's Findings

Johnathan raises two assignments of error and several subsidiary arguments. (Pl.'s Br., ECF No. 12, at 23–46.) Importantly, Johnathan devotes five and a half pages of his brief to his argument that the ALJ's decision failed to properly explain how he considered his obesity. (*Id.* at 32–37.) Specifically, Johnathan contends the "ALJ failed to properly consider whether or not plaintiff's obesity could exacerbate the impact his impairments would otherwise have had in the absence of obesity at steps 4 and 5 of the sequential evaluation as required by SSR 19-2p." (*Id.* at 32.) Further, Johnathan argues the "ALJ failed to properly consider the impact of plaintiff's obesity on his other impairments in terms of his residual functional capacity as required by SSR 19-2p." (*Id.* at 33.) Moreover, Johnathan maintains the "combination of plaintiff's impairments, including obesity, have resulted in a severe impairment in plaintiff's ability to sit, stand, walk, perform manipulative limitations or lift weights and the ALJ erred by failing to properly consider

the combination of all of plaintiff's impairments and by failing to evaluate the functional effects of plaintiff's obesity." (*Id.* at 34.)

Among other arguments in opposition, the Commissioner acknowledges "Courts have remanded where the ALJ either does not mention obesity at all or only mentions obesity 'without providing any additional analysis.'" (Def.'s Br., ECF No. 17, at 10–11 (quoting *Daisy F. v. Kijakazi*, 2022 WL 18936086, at *8 (E.D. Va. Dec. 15, 2022)). Further, the Commissioner argues "the ALJ considered Plaintiff's obesity throughout the decision and explained that he considered it specifically with respect to Plaintiff's exertional level, reaching ability, and exposure to environmental factors." (Def.'s Br., at 11.) Moreover, the Commissioner claims "Plaintiff has not demonstrated that his obesity caused greater limitations than those identified by the ALJ or cited evidence indicating that greater limitations were attributable to his weight." (*Id.*)

As a preview of the analysis below, the court finds (1) the ALJ erred by not discussing whether Johnathan's obesity impacted his functions and impairments, and (2) remand is warranted.

## II. SSR 19-2p and Case Law Regarding How ALJs Should Evaluate and Explain Findings Regarding Obesity

SSR 19-2p directs how ALJs should evaluate and explain their findings regarding obesity:

> Obesity is not a listed impairment; however, the functional limitations caused by the MDI [medically determinable impairments] of obesity, alone or in combination with another impairment(s), may medically equal a listing. **For example, obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing.**
>
> We will not make general assumptions about the

> severity or functional effects of obesity combined with another impairment(s). **Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment.** We evaluate each case based on the information in the case record. . . .
>
> We must consider the limiting effects of obesity when assessing a person's RFC. RFC is the most an adult can do despite his or her limitation(s). As with any other impairment, **we will explain how we reached our conclusion on whether obesity causes any limitations.**

SSR 19-2p, 2019 WL 2374244, *4 (May 20, 2019) (citation modified and emphasis added). Further, SSR 19-2p notes ALJs should be aware that obesity can impact a plaintiff's exertional and non-exertional limitations:

> A person may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling. A person may have limitations in the nonexertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling. **Obesity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities.** Obesity may also affect a person's ability to manipulate objects, if there is adipose (fatty) tissue in the hands and fingers, or the ability to tolerate extreme heat, humidity, or hazards.

*Id.* (emphasis added). Moreover, SSR 19-2p acknowledges "the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." *Id.*

Given SSR 19-2p, this court held obesity can cause exertional and non-exertional limitations:

> Social Security Ruling 19-2p recognizes that obesity can affect a person's exertional functions (such as sitting, standing, walking, lifting, carrying, pushing, and pulling), non-exertional functions (such as climbing, balancing, stooping, kneeling, crouching, and crawling), and environmental limitations (such as ability to tolerate extreme heat, humidity,

> or hazards). . . . In addition, obesity may affect a person's ability to manipulate objects as well as a person's range of motion in the skeletal spine and extremities due to increased stress on weight-bearing joints.

*Stacey S. v. Comm'r of Soc. Sec.*, No. 7:24-cv-00834, 2026 WL 447426, at *8 (W.D. Va. Feb. 17, 2026) (ellipsis original) (quoting *David B. v. Bisignano*, No. 3:24-cv-623, 2025 WL 2155789, at *5 (E.D. Va. July 29, 2025) (quoting SSR 19-2p, 2019 WL 2374244, at *2), *report and recommendation adopted*, No. 3:24-cv-623, 2025 WL 2771668 (E.D. Va. Sept. 26, 2025).

Importantly, "**when an ALJ mentions obesity, but provides no analysis or discussion of the relationship between obesity and other physical impairments and functional abilities, some courts remand**." *Sarah T. v. Bisignano*, No. 5:24-cv-00023, 2025 WL 2345160, at *6 (W.D. Va. Aug. 13, 2025) (emphasis added); *see also Lakeysia G. v. Kijakazi*, No. 4:22-cv-00005, 2023 WL 2428292, at *6 (W.D. Va. Mar. 9, 2023) (citation modified) ("Nevertheless, the ALJ did not meaningfully discuss the relationship between Lakeysia's extreme obesity and her back and knee impairments and their effect on her functional abilities. Accordingly, reversal is required."), *report and recommendation adopted*, No. 4:22-cv-00005, 2023 WL 2632820 (W.D. Va. Mar. 24, 2023); *Kimberly W. v. Comm'r of Soc. Sec.*, No. 4:19-cv-00023, 2021 WL 827075, at *5 (W.D. Va. Mar. 3, 2021), *report and recommendation adopted*, No. 4:19-cv-00023, 2021 WL 1232101 (W.D. Va. Mar. 31, 2021) (citation modified) ("Nevertheless, the ALJ did not meaningfully discuss the relationship between Kimberly's extreme obesity and her back, hips, and knee impairments and their effect on her functional abilities. Accordingly, reversal is required."). For example, a district court in the Fourth Circuit found the "ALJ plainly committed error in evaluating the Plaintiff's

claim for disability by not considering the combined effects of Plaintiff's severe obesity on her multiple other severe impairments, as mandated by SSR 19-2p." *Mosley v. Kijakazi*, No. 1:22-cv-2623, 2023 WL 3451125, at *2 (D.S.C. May 15, 2023). Further, "an ALJ must consider the limiting effects of obesity in determining the RFC and must explain the conclusion whether obesity causes any limitations." *Stacey S.*, 2026 WL 447426, at *8 (citation modified). Moreover, "'the ALJ must consider a claimant's obesity in steps two through five of the five-step inquiry.'" *Krystal H. v. Comm'r of Soc. Sec.*, No. 4:24-cv-00045, 2026 WL 738111, at *7 (W.D. Va. Mar. 16, 2026) (quoting *Kimberly W.*, 2021 WL 827075, at *5), *report and recommendation adopted*, No. 4:19-cv-00023, 2021 WL 1232101 (W.D. Va. Mar. 31, 2021)).

However, the "ALJ's conclusion that obesity is a severe impairment does not by itself necessitate additional limitations." *Lakeysia G.*, 2023 WL 2428292, at *5 (citing SSR 19-2p, 2019 WL 2374244, at *2). "There is no language in SSR 19-2p that directs the ALJ to include a lengthy analysis regarding obesity. Rather, the ruling mandates that the ALJ consider the limiting effects of obesity when assessing a person's RFC." *Angela S. v. Comm'r of Soc. Sec. Admin.*, No. 7:23-cv-00228, 2024 WL 5103413, at *3 n.2 (W.D. Va. Dec. 13, 2024) (citation modified) (citing *Richards v. Astrue*, No. 6:11-cv-00017, 2012 WL 5465499, at *4 (W.D. Va. July 5, 2012)). Thus, courts in the Fourth Circuit have affirmed ALJs "where the ALJ did not articulate a detailed discussion but showed that he or she considered the applicable law and cumulative effects of the claimant's obesity." *Stacey S.*, 2026 WL 447426, at *8 (emphasis added) (citing *David B.*, 2025 WL 2155789, at *5). For example, a court affirmed an ALJ "where the ALJ found obesity to be a severe impairment at step two, and discussed obesity pursuant to SSR 19-2p at step three, and provided a

short explanation of how the claimant's obesity impacted the RFC findings at step four." *Stacey S.*, 2026 WL 447426, at *8 (citation modified) (citing *Katherine T. v. Kijakazi*, No. 6:21-cv-7, 2022 WL 4477703, at *9 (W.D. Va. Sept. 26, 2022)).

Also, when a plaintiff challenges an ALJ's SSR 19-2p assessment, the claimant "must provide medical evidence establishing functional limitations caused by [his] obesity that the RFC does not address." *Tonya D. v. Saul*, No. 7:18-cv-242, 2019 WL 4741249, at *10 (W.D. Va. Aug. 6, 2019) (citing *Richards v. Astrue*, No. 6:11-cv-00017, 2012 WL 5465499, at *7 (W.D. Va. July 5, 2012)), *report and recommendation adopted sub nom. Davis v. Saul*, No. 7:18-cv-00242, 2019 WL 4740512 (W.D. Va. Sept. 27, 2019). However, some courts have remanded because of the ALJ's failure to comply with SSR 19-2p without discussing whether the claimant advanced obesity-related functional limitations not accounted for by the ALJ in his RFC determination. *See, e.g.*, *Sandra H.*, 2025 WL 429989, at *7–9 (remanding because the ALJ's decision failed to adequately explain how plaintiff's obesity was evaluated, but the district judge's memorandum opinion did not require plaintiff to provide medical evidence establishing functional limitations caused by obesity); *Lakeysia G.*, 2023 WL 2428292, at *5–6 (recommending remand because the ALJ's decision failed to adequately explain how plaintiff's obesity was evaluated, but the magistrate judge's report and recommendation did not discuss the requirement that plaintiff provide medical evidence establishing functional limitations caused by obesity).

## III. Given the Facts and Briefing in Johnathan's Case, Remand Is Warranted Pursuant to SSR 19-2p

Here, as noted above, Johnathan argues the ALJ erred because he failed to adequately explain how Johnathan's obesity impacted his functions and impairments. (Pl.'s Br., 34.) As discussed below, I agree.

At step three, the ALJ included boilerplate language regarding SSR 19-2p and Johnathan's obesity:

> The guidance set forth in Social Security Ruling 19-2p (obesity) has also been considered, since the claimant has a medically determinable impairment of obesity with a body mass index (BMI) of 30.0 or higher. As explained in the Ruling, obesity is not a listed impairment; however, the functional limitations caused by obesity, either alone or in combination with other impairments, may medically equal a listing. Here, the undersigned has considered all evidence from all sources in determining that obesity is a "severe" impairment at step two. However, the functional limitations caused by obesity, considered alone and in combination with the claimant's other medically determinable impairments, do not medically equal any potentially relevant listing. The undersigned has also considered the limiting effects of obesity in reaching the residual functional capacity findings set forth below.

R. 24.

In the RFC assessment, the ALJ noted "the longitudinal evidence shows body mass index (BMI) values in the low-30s since the alleged onset date, which could reasonably be expected to cause some shortness of breath and fatigue, as well as pain." R. 29. Further, the ALJ commented Johnathan's "COPD and associated fatigue and breathing problems, as well as obesity, have been considered in finding that the claimant was limited to a range of light work with reduced exposure to environmental conditions that could exacerbate the symptoms." *Id.*

SSR 19-2p states obesity can impact functional limitations and impairments. SSR 19-2p, 2019 WL 2374244, *4. SSR 19-2p notes "we will explain how we reached our

conclusion on whether obesity causes any limitations." *Id.* As discussed below, what is missing from the ALJ's RFC assessment is a discussion of whether Johnathan's obesity increased his functional limitations, worsened his stress on his weight-bearing joints, and limited his range of motion of the skeletal spine and extremities. This discussion is warranted given the requirements of SSR 19-2p and given Johnathan's severe impairments of degenerative disc disease, scoliosis, hip bursitis, and lumbar radiculopathy. R. 23.

Upon an independent review of the evidence, the court finds Johnathan's obesity was relevant to his functions and severe impairments of degenerative disc disease, scoliosis, hip bursitis, and lumbar radiculopathy. *Id.* As noted below, Johnathan's subjective allegations about pain—which could have been worsened by his obesity—support the court's finding that the ALJ erred when he did not discuss whether Johnathan's obesity affects his functions and impairments. Johnathan testified his back pain was a "very nagging pain," and he noted "it's always there when I'm sitting, standing, laying." R. 66. According to Johnathan, he laid down a couple of times per day for 30 minutes to an hour to alleviate his back pain. *Id.* Jonthan's back pain "shoots all the way down [his] right leg" and into his right foot. R. 68. Further, Johnathan reported he had hip pain for several years. R. 67. Johnathan reported difficulties reaching with his arms and grasping objects. R. 69–70. In his function report, Johnathan alleged he experienced pain when he sat, stood, and walked. R. 251. According to Johnathan, he had difficulties with dressing, bathing, feeding himself, and using the toilet. R. 252. Moreover, Johnathan reported he experienced moderate to severe pain daily in his shoulders, lower back, hips, legs, knees, and neck. R. 284.

Additionally, the medical evidence shows Johnathan had impairments that could be worsened by obesity. Physical examinations showed Johnathan had pain in his bilateral lower extremities. R. 446. At some physical examinations, he had tenderness in his lower back, R. 508, 514, 530, and on physical examination he reported localized joint pain. R. 523, 535, 539, 544, 827. Health care providers noted he had a limited range of motion in his cervical spine, R. 596, 601, 709, 728. Further, providers observed he had an antalgic gait. R. 652, 655, 933, 950. Providers made the assessment that he had chronic pain. R. 446, 723. According to his providers, Johnathan had osteoarthritis involving multiple joints. R. 449, 766. Assessments of Johnathan found he had chronic pain syndrome. R. 590, 652, 777. Johnathan was diagnosed with lumbar radiculopathy, R. 655, 866. Providers recorded he was overweight. R. 596, 709.

Here, the ALJ failed to discuss whether Johnathan's obesity impacted his functional limitations, worsened stress on weight-bearing joints, and limited his range of motion of the skeletal spine and extremities, even though SSR 19-2p notes obesity may have an effect "upon the person's ability to perform routine movement and necessary physical activity within the work environment." SSR 19-2p, 2019 WL 2374244, *4. Johnathan's ability to perform routine movements and necessary physical activities within the work environment is relevant and significant because he had severe impairments that affected his joints, skeletal spine, and extremities. R. 23. The ALJ's decision notes Johnathan "said it hurt to stand, walk, and sit." R. 25. However, the ALJ did not discuss how Johnathan's obesity might limit his functions of sitting, walking, and standing. Courts have remanded because an ALJ failed to discuss the impact of obesity

on a plaintiff's functions and impairments. *See, e.g.*, *Kimberly W.*, 2021 WL 827075, at *5; *Mosley*, 2023 WL 3451125, at *2.

Further, according to the Social Security regulations, light work "requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Importantly, "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." *Jennifer S. v. Bisignano*, No. 5:24-cv-00071, 2025 WL 2388607, at *4 n.4 (W.D. Va. Aug. 15, 2025) (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1986)).

Here, the ALJ found Johnathan could perform "light work." R. 24. As a result, the ALJ found Johnathan could stand or walk, off and on, for a total of approximately six hours in an eight-hour workday. The ALJ failed to explain how he resolved the tension between his light work finding versus evidence showing Johnathan could not walk far and had pain from walking. R. 25; *see also Bruns v. O'Malley*, No. 4:23-cv-111, 2024 WL 4052422, at *5 (E.D.N.C. July 22, 2024) ("The ALJ's lack of explanation regarding this conflicting evidence in the record leaves the court to wonder how the ALJ concluded that Claimant could walk or stand for up to six hours despite his impairments.") (citing *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)), *report and recommendation adopted*, No. 4:23-cv-111, 2024 WL 4043812 (E.D.N.C. Sept. 4, 2024). I find the ALJ failed to adequately explain whether Johnathan's obesity would interfere with his ability to stand and walk six hours a day, and the lack of explanation prevents the court from meaningfully reviewing the ALJ's decision. *See, e.g.*, *Shawn R. v. Bisignano*, No. 1:25-cv-118, 2026 WL 607376, at *9 (M.D.N.C. Mar. 4, 2026) ("The lack of explanation makes it impossible for the Court to determine whether the ALJ's determination is supported by

substantial evidence.") (citing *Sharee B. v. Bisignano*, No. 5:25-cv-00045, 2025 WL 4065846, at *16 (S.D.W. Va. Dec. 17, 2025), *report and recommendation adopted sub nom. Ballard v. Bisignano*, No. 5:25-cv-00045, 2026 WL 148146 (S.D.W. Va. Jan. 20, 2026)).

Given the facts of this case, the ALJ in the RFC assessment should have addressed the effects of Johnathan's obesity on his functions and impairments. *See, e.g.*, *Mosley*, 2023 WL 3451125, at *2–3 (remanding, pursuant to SSR 19-2p, because the ALJ found plaintiff had severe impairments of, among other things, neuropathy, degenerative disc disease of the lumbar spine, degenerative joint disease, but the ALJ "failed to address whether the effects of these numerous severe impairments were greater due to Plaintiff's obesity and, if so, to what degree."). The court would expect that Johnathan's obesity could have worsened his severe impairments of degenerative disc disease, scoliosis, hip bursitis, and lumbar radiculopathy, R. 23, so the ALJ erred when he did not discuss whether obesity exacerbated his musculoskeletal impairments. I recommend remand because the ALJ failed to adequately discuss whether Johnathan's obesity had an impact on his functions and impairments. *See, e.g.*, *Alvinita L. L. v. O'Malley*, No. 2:23-cv-625, 2024 WL 6984317, at *14 (E.D. Va. Nov. 7, 2024) ("Remand has been found appropriate where an ALJ generally mentioned obesity but failed to analyze or discuss the relationship between obesity and other physical impairments and functional abilities.") (citing *Daisy F.*, 2022 WL 18936086, at *8–9), *report and recommendation adopted sub nom. Alvinita L. v. Bisignano*, No. 2:23-cv-625, 2026 WL 149897 (E.D. Va. Jan. 20, 2026).

Also, as noted above, when a plaintiff challenges an ALJ's decision based on SSR 19-2p, plaintiff "must provide medical evidence establishing functional limitations caused

by [his] obesity that the RFC does not address." *Tonya D.*, 2019 WL 4741249, at *10 (citing *Richards*, 2012 WL 5465499, at *7). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). Other medical evidence includes "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

Here, Johnathan provides the following discussion of medical evidence that for SSR 19-2p purposes sufficiently establishes his functional limitations in his abilities to sit, walk, and stand:

> This Court has also held that in challenging an ALJ's obesity analysis, a claimant must advance additional obesity related function limitations not accounted for by the ALJ in the RFC determination. *Matthew v. Astrue*, 2009 WL 97676, at *4, n.4 (W.D. Va. Feb. 27, 2009); *Phelps v. Astrue*, 2010 WL L3632730, at *7 (W.D. Va. September 9, 2010). **In this case, the medical records document that plaintiff's obesity causes additional functional limitations not accounted for by the ALJ in his RFC determination. The medical evidence of record documents plaintiff's obesity exacerbates plaintiff's other impairments and increases his pain resulting in additional difficulties in plaintiff's ability to sit, stand, walk and perform manipulative limitations.** The ALJ failed to account for the fact that plaintiff's extra weight increases his pain and fatigue making it more difficult for him to sit or stand long enough or use his upper extremities to maintain substantial gainful employment and resulting in his need to lie down during the day.
>
> **Plaintiff's providers noted his obesity and repeatedly encouraged plaintiff to lose weight as it contributes to his impairments. (R. 509, 515, 519, 525, 531, 537, 542, 563, 771, 777, 782). It is clear from the evidence of record that plaintiff's obesity has impacted his other impairments** since his alleged onset date of disability and the ALJ erred by failing to properly

> consider the impact of plaintiff's obesity on his other impairments and RFC. (R. 23-24, 29).

(Pl.'s Br., at 35–36 (emphasis added).) As such, Johnathan adequately provides medical evidence establishing functional limitations not addressed by the ALJ that are caused or exacerbated by his obesity.

In summary, the ALJ failed to adequately discuss whether Johnathan's obesity impacted his functions and impairments. *See generally* R. 23–33. Given the facts of this case, I recommend remand. *See, e.g.*, *Mosley*, 2023 WL 3451125, at *2 (remanding, pursuant to SSR 19-2p, because the ALJ failed to consider how plaintiff's obesity impacted plaintiff's severe impairments). I take no position on whether Johnathan is entitled to DIB for the relevant period. Instead, on remand, the ALJ must provide an adequate explanation regarding whether Johnathan's obesity impacted his functions and impairments.[6]

## CONCLUSION

For the above reasons, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the

[6] Plaintiff made several arguments on appeal. Because the court determined that the ALJ erred in the ways discussed above, the court declines to further address Plaintiff's remaining arguments. However, upon remand, the ALJ should examine all of Plaintiff's arguments and re-evaluate the evidence as a whole. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

> court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

Entered: August 17, 2026

C. Kailani Memmer
United States Magistrate Judge